IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SILVERIO REYES MARTINEZ,

        Petitioner,                No. CIV S-07-0999 FCD GGH P

    vs.

M. EVANS, et al.,

        Respondents.          <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner filed the original petition on May 16, 2007, in the United States District Court for the Northern District of California. Petitioner challenges his 2001 conviction for one count of forcible lewd acts upon a minor and five counts of non-forcible lewd acts. Petitioner is serving a sentence of 30 years to life.

        On August 4, 2008, respondent filed a motion to dismiss on grounds that this action is barred by the statute of limitations. Following the November 13, 2008, hearing on the motion, the court determined that an evidentiary hearing was required to address the equitable tolling issues of 1) petitioner's ability to speak, read or write English; and 2) lockdowns at the prison. On November 18, 2008, the court denied respondent's motion to dismiss without prejudice to its consideration following resolution of the factual issues at the evidentiary hearing.

On April 20, 2009, the evidentiary hearing was held regarding this motion. Accordingly, the court reinstates respondent's motion to dismiss.  While the issue of equitable tolling is close, after carefully considering the record, the court recommends that the motion be denied.

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

On June 18, 2003, the California Supreme Court denied petitioner's petition for review.  Respondent's Exhibit F.  Petitioner's conviction became final ninety days from June 18, 2003, or September 16, 2003, when the period for petitioning the United States Supreme Court for certiorari expired.  Bowen v. Roe, 188 F.3d 1157, 1158-1159 (9th Cir. 1999).  Petitioner had one year from that date to file a timely federal petition.  The instant action, filed May 16, 2007, is not timely unless petitioner is entitled to statutory or equitable tolling.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.

1    Petitioner's first state habeas petition was filed in the Sacramento County

2  Superior Court.   Respondent's Exhibit G.  The petition is file stamped October 25, 2004, but

3  signed by petitioner on October 18, 2004.  Id.  The petition does not contain a proof of service.

4  Id.  On December 9, 2004, the Superior Court denied the petition.  Id., Exhibit H.  On February

5  3, 2005, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal.

6  Respondent's Exhibit I.  On February 24, 2005, the California Court of Appeal denied this

7  petition.  Respondent's Exhibit J.  On April 7, 2005, petitioner filed a habeas corpus petition in

8  the California Supreme Court.  Id., Exhibit K.  On March 15, 2006, the California Supreme

9  Court denied the petition.  Id., Exhibit L.

10    On July 19, 2006, petitioner filed another habeas corpus petition in the

11  Sacramento County Superior Court.  Id., Exhibit M.  On August 29, 2006, the Superior Court

12  denied this petition.  Id., Exhibit N.  On October 26, 2006, petitioner filed a second petition in

13  the California Supreme Court.  Id., Exhibit O.  On April 25, 2007, this petition was denied.  Id.,

14  Exhibit P.

15    Giving petitioner the benefit of the doubt and finding his first state habeas petition

16  filed on October 18, 2004, pursuant to the mailbox rule, he is not entitled to statutory tolling

17  because he failed to file this petition before the limitations period ran on September 15, 2004.

18  Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001) (a state petition filed after the limitations

19  period has run does not re-start the clock).

20    The one year statute of limitations for filing a habeas petition may be equitably

21  tolled if "extraordinary circumstances beyond a prisoner's control make it impossible to file a

22  petition on time."  Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).  The prisoner must

23  show that the "extraordinary circumstances" were the cause of his untimeliness.  Stillman v.

24  LaMarque, 319 F.3d 1199, 1203 (9th Cir. 2003).  "Indeed, the threshold necessary to trigger

25  equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule."  Miranda v.

26  Castro, 292 F.3d 1063, 1066 (9th Cir. 2002).  Petitioner "bears the burden of showing that this

extraordinary exclusion should apply to him." Id..  Determining whether equitable tolling applies

is a "fact-specific" inquiry.  Fry v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001).

Petitioner argues that he is entitled to equitable tolling due to inadequate law

library access caused by lockdowns and because he does not speak English.  While limited law

library access caused by protracted lockdowns may be grounds for equitable tolling, petitioner

must demonstrate that limited law library access actually hindered his ability to file a timely

federal petition.  Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

In Mendoza v. Carey, 449 F.3d 1065, 1071 (9th Cir. 2006), the Ninth Circuit

found that a "non-English speaking petitioner seeking equitable tolling must, at a minium,

demonstrate that during the running of the AEDPA time limitation, he was unable, despite

diligent efforts, to procure legal materials in his own language or translation assistance from an

inmate, library personnel, or other source."  449 F.3d at 1070.

Petitioner's declaration attached to his opposition contains background

information to the evidence presented at the evidentiary hearing:

4.  When I was first brought to Salinas Valley State Prison I was considered Level IV–High Security.  I was only allowed to be on the yard twice a month.  Frequently I was on lock-down and unable to go to the law library or out on the yard at all.  Sometimes we had only 2-3 hours between lockdowns lasting a month.

5.  After my appeal was denied in June 2003, my appointed attorney wrote to me.  She said that we had lost the appeal and that there was no more she could do for me; I would have to represent myself.  She did not tell me about habeas corpus or tell me that I had only one year to file a petition in federal court.

6.  I wrote to the Innocence Project.  They sent me a questionnaire that I filled out and returned to them.  I waited but did not receive a response until years later.

7.  I also asked my family to help me find a lawyer.  My mother, Maria Reyes, contacted an attorney in the Sacramento area.  The attorney said that it would be $3000 just to read the transcripts and record in my case.  My mother did not have the money to do that.

8.  I asked many inmates at the prison to help me, but they were all too busy with other cases.  Finally, sometime in 2004, I found "Red Bear" (I don't know his real name).  He told me to go to the law library and get materials on habeas corpus.

9.  I went to the library but there was no information on habeas corpus in Spanish. One of the inmates that worked at the library spoke Spanish.  He gave me the habeas corpus form in English but did not tell me I had one year to file the forms. There were no notices posted in Spanish regarding deadlines for filing habeas petitions.

10.  Red Bear filled out the habeas forms for me. When I was ready to copy the paperwork at the law library in the fall of 2004, I could not go because the A yard was on lockdown and I did not have a court deadline.  I filed the petition as soon as I could.

The court will now summarize the relevant evidence/testimony from the evidentiary hearing.

At the hearing, the parties stipulated that petitioner was on lockdown from September at Salinas Valley State Prison (SVSP) for 141 days between September 16, 2003, and September 15, 2004.  RT at 2.  The parties further stipulated that from September 16, 2004, until May 16, 2007, petitioner was on lockdown for 244 additional days.  RT at 2.  The parties stipulated that there is no record that petitioner asked for or received permission to access the prison library while he was on lockdown.  RT at 2.

Petitioner himself testified through an interpreter.  Petitioner also required an interpreter for the portion of the evidentiary hearing when he was not testifying.  Petitioner testified that at his criminal trial, he required an interpreter.  RT at 5.  He testified that he communicated with his state appellate lawyer in Spanish.  RT at 5.  He also testified that he cannot really read English.  RT at 5.

At the hearing, petitioner's testimony supported what was contained in his declaration quoted above.  He testified that after he lost his appeal, his appellate attorney told him that if he wanted to continue challenging his appeal, he would have to do it on his own.  RT at 6.  Petitioner testified that his appellate attorney advised him that he could pursue a challenge to his conviction by filing a habeas corpus petition, but she did not tell him how to do that.  RT at 20.  Petitioner also testified that he first learned that he would have to present a habeas corpus

\\\\\

1    petition to continue challenging his judgment when he talked to Red Bear.  RT at 25.[1]

2           After petitioner learned that his appeal had been denied, he began looking for

3    someone to help him pursue his challenge to his conviction.  RT at 7.  His family could not

4    afford an attorney, so sometime in 2003 he wrote a letter to the Innocence Project in Spanish.  RT

5    at 7-8.  After receiving no response, he had another inmate help him write a second letter to the

6    Innocence Project in English.  RT at 9.  Petitioner never heard back from the Innocence Project.

7    RT at 10.

8           Petitioner testified that he also asked inmates at SVSP to help him challenge his

9    conviction.  RT at 11.  He testified that he asked four inmates and finally was referred to an

10   inmate named Red Bear.  RT at 11.  Red Bear spoke a little Spanish and agreed to help him.  RT

11   at 11-12.  Red Bear told petitioner to go to the law library and get the forms for a habeas corpus

12   petition.  RT at12.  At the law library, petitioner asked one of the inmate clerks who spoke

13   Spanish for the form.  RT at 12.  The form was in English.  RT at 12.  After getting the form, he

14   gave it to Red Bear who filled it out for him.  RT at 13.  Neither Red Bear nor the Spanish

15   speaking inmate library clerk told petitioner about the AEDPA deadline.  RT at 14.  Petitioner

16   did not learn about the AEDPA deadline until his present attorney told him about it.  RT at 14.

17          At the hearing, the parties stipulated that the law library at Salinas Valley State

18   Prison (SVSP), where petitioner was incarcerated during all relevant times, did not contain legal

19   materials in Spanish.  RT at 2.  In particular, the SVSP contained no copy of the AEDPA in

20   Spanish.  RT at 2.  John Burk, the Senior Librarian at SVSP from 1987-2006, testified that the

21   law library contained no court forms, including habeas corpus petitions, in Spanish.  RT at 31,

22   37.  Mr. Burk also testified that for the past five years, the legal materials at the SVSP law library

23   were computerized.  RT at 34.  None of the computerized legal materials were in Spanish.  RT at

24

25          [1]  This testimony appears conflicting, but the issue at evidentiary hearing was not whether
     petitioner knew he needed to file a habeas petition at some time, but rather when and how to do
26   it.

1   35.

2           Mr. Burk also testified that the SVSP law library had 3 inmate clerks and a library

3   technical assistant (LTA), all with knowledge of the standard legal forms.  RT at 35.  Mr. Burk

4   testified that petitioner's LTA did not speak Spanish.  RT at 38.  If one of the inmate clerk's did

5   not speak Spanish, then the practice was for the LTA to ask a Spanish speaking inmate already in

6   the law library to assist if a Spanish speaking inmate required assistance.  RT at 39-40.  Mr. Burk

7   testified that the inmate clerks were allowed to only reference assistance, i.e. they could not do

8   legal research for other inmates.  RT at 36.

9           The court now considers whether petitioner is entitled to equitable tolling

10  pursuant to Mendoza, supra.  After observing petitioner at the hearing, it is clear that he is a non-

11  English speaker.  The real issue is whether he acted with due diligence to "procure legal

12  materials in his own language or translation assistance from an inmate, library personnel, or other

13  source" during the limitations period, i.e. from September 2003-September 2004.  Mendoza, 449

14  F.3d at 1070.

15          Petitioner could not have procured legal materials in his own language because

16  SVSP had none.  Petitioner also could not have obtained assistance from library personnel

17  because the law library contained no habeas corpus forms or legal materials in Spanish.  Because

18  petitioner's LTA did not speak Spanish, he could not have obtained translation assistance from

19  her.  It does not appear that petitioner could have obtained translation assistance from the inmate

20  clerks, assuming any spoke Spanish, as they were only allowed to provide reference assistance.

21  Therefore, petitioner's only option was to obtain translation assistance from another inmate or

22  source.[2]

23  ────────────────

24          [2] The undersigned is not suggesting that prisons have a duty to have complete law
    libraries in several languages.  Nor is the undersigned suggesting that the law libraries must have
    a multitude of forms in a multitude of languages.  Indeed, this federal court, and many others, do
25  not accept forms in a foreign language, so what good would it do to have the forms in a foreign
    language.  The inmate would still have to find someone to translate the matter onto an English
26  form.  This is a case involving equitable tolling, not the required composition of prison law

1    As discussed above, after his conviction became final, petitioner began his efforts

2   to continue challenging his conviction by writing letters to the Innocence Project.  He wrote his

3   first letter in 2003.  At this time, petitioner's family also sought to hire private counsel but could

4   not afford to do so.  When these efforts failed, petitioner then began seeking help from other

5   inmates.  After talking to four inmates, he found Red Bear who told petitioner that he would help

6   him.  After obtaining Red Bear's assistance in 2004, during the limitations period, Red Bear

7   prepared petitioner's first state habeas petition.  Once petitioner obtained the assistance of Red

8   Bear, he began diligently pursuing his collateral remedies.

9    The efforts described above demonstrate due diligence by petitioner during the

10   limitations period to obtain language translation assistance in challenging his conviction.  At the

11   hearing, respondent argued that petitioner should only be granted equitable tolling for efforts he

12   made to file his habeas petition.  In other words, respondent argued that petitioner was not

13   entitled to equitable tolling for the time spent writing letters to the Innocence Project or while his

14   family sought to hire private counsel.  Because the law library contained no legal materials in

15   Spanish, the court finds that he is entitled to equitable tolling for the time spent attempting to

16   seek assistance from counsel, i.e. private counsel and the Innocence Project.  By seeking to hire

17   counsel petitioner was, in effect, seeking the translation assistance discussed in Mendoza.

18   Petitioner cannot be faulted because he did not first seek assistance from other inmates in his

19   efforts to obtain collateral relief.

20    Accordingly, because petitioner acted with due diligence during the limitations

21   period in seeking assistance in the preparation of his post-collateral challenges to his conviction,

22   the court finds that he is entitled to equitable tolling pursuant to Mendoza, supra.  Petitioner also

23

24   libraries.  One could infer from Mendoza that equitable tolling will become the rule rather than
    the exception for foreign language speaking prisoners, but that is the path Mendoza has charted.
25   Also one wonders why illiteracy *per se* is insufficient to invoke equitable tolling, but [English]
    illiteracy caused by a foreign language problem is sufficient.  The undersigned is not permitted,
26   however, to depart from the wide "foreign language" path created by Mendoza.

1   argues that he is entitled to equitable tolling due to lockdowns at the law library.  However,

2   because the law library had no habeas corpus forms in Spanish, petitioner cannot argue that the

3   lockdowns hindered his ability to get to the law library to do legal research.  At the evidentiary

4   hearing, petitioner made no showing that the lockdowns impacted his ability to obtain the habeas

5   corpus form or otherwise obtain copies requested by Red Bear.  Petitioner is not entitled to

6   equitable tolling on this ground.

7          Because petitioner is entitled to equitable tolling, respondent's motion to dismiss

8   should be denied.

9          Accordingly, IT IS HEREBY RECOMMENDED that respondent's August 4,

10  2008, reinstated motion to dismiss (no. 17) be denied and respondent be ordered to file an answer

11  to the amended petition.

12         These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14  days after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17  shall be served and filed within ten days after service of the objections.  The parties are advised

18  that failure to file objections within the specified time may waive the right to appeal the District

19  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20  DATED: 06/25/09

21                                        /s/ Gregory G. Hollows

22                                        _____
                                          UNITED STATES MAGISTRATE JUDGE

23

24  mart999.mtd

25

26

9